Good morning, your honors, all of you. I would ask that you give me approximately five minutes to cover some matters that are not, because of circumstances, namely a post-briefing case reflected in our briefs, so that I can be sure that I've adequately covered this non-brief material. You keep track of your time, but use it as you wish. Thank you. Well, I have three points. The first, and the one that goes to the merits, involves what kind of case this is. Although it has immigration consequences, it's not quote-unquote an immigration case. As this court recognized in United States v. Chan decided after briefing closed, which is reported at 792 Fed Third 1151, this case is really an inadequate assistance of counsel case with deportation consequences. Let me ask, putting aside for a second whether or not we actually have the ability to review the validity of the state court conviction in this petition for review. Yes. Assuming you're right, what does the court do? How do we know that your client received an effective assistance of counsel? There's been no hearing. The case proceeded through the BIA. What is it that you would have us do? Do exactly what you did in United States v. Chan and in United States v. Kwan, upon which we rely in our eventually a coram nobis because he or she had been released from prison. And we were reviewing the decision of a district court whether or not to grant coram nobis on a conviction. Here you're challenging a state court conviction. Where would you have the evidentiary hearing with respect to an effective assistance of counsel? At the BIA? It's not needed. Well, why is it not needed? For the very reasons this court stated in United States v. Chan. Namely, it's undisputed on the facts that the petitioner was given misadvice with regard to the consequences. No. What's undisputed on the facts is that the court's admonition simply said that there may be immigration consequences as opposed to there will be immigration consequences. Yes. And that's an admonition which was better than the law required at the time that it was given because Padilla wasn't decided until a number of years later. No, no. Absolutely not so. Let's work with me for a second here. All right. Was Padilla decided after your case? No, before it. After your plea? It was after the plea. After the plea. And it's not retroactive, correct? Correct. Okay. So at that time as a matter of constitutional law, the court was not required to give any admonition at all. That's also correct. But the court gave an admonition that said there may be immigration consequences. Which was misadvice and which under Kwan means that it was unaffected by Padilla. Padilla cited Kwan with approval. And in United States v. Chavez, the Supreme Court held that the admonition did not apply to Kwan. How do we know that the, how do we know, put aside what the court said to your client, how do we know that your client received ineffective assistance of counsel, not ineffective admonition by the court? Because Exhibit A to my affidavit in the record shows that the court and counsel joined in the misadvice. And that was recorded on Form 12-120. Here's my difficulty. We're an appellate court. Yes. And you have not gone to any trial court to try to set aside this conviction. Right. And you are asking us, reviewing an order of removal from the BIA, to set aside a conviction where no trial court has ever had an evidentiary hearing or found facts. That's correct. Tell me, cite me any case in which this court has ever done that. United States v. Chen. No, United States v. Chen was a criminal proceeding in the United States courts against Chen. And we were dealing inside the federal criminal system. Here we have a case that comes to us out of the immigration system. And so I'm trying to figure out how it is, under your view of the world, facts are supposed to be found. Just because you filed an affidavit, we get to dismiss the case? No, there's no dispute of fact. The advice that was given was constitutionally defective, because the device that was given merely stated that there might be deportation consequences, whereas... When did the case come down that said that kind of advice was constitutionally defective? Wasn't that case Padilla? No, absolutely not. That case was, in the Ninth Circuit, was United States v. Kwan, and in the Supreme Court jurisprudence, that case was Strickland v. Washington. Strickland v. Washington is the pretty much the landmark case on inadequate assistance... We all know Strickland, but tell me why at the time, before Padilla, a state trial judge erred by saying there might be consequences, immigration consequences from your guilty plea? Your position is because there would be. So the state judge is supposed to know that there absolutely will be? It isn't so much just the state judge, it's also her lawyer. The state judge has a responsibility to follow the law, but a lawyer has a responsibility to the client to know the law and advise the client. And in this case, and it didn't happen in Chan, and that's why we have standing to ask for a writ quorum nobis. Well, just a second. In Chan, there they were federal convictions, and the petitioner went back into federal district court in which the conviction had been entered. Do you know of any case where a conviction has been invalidated within the four corners of an immigration proceeding? No. So you're asking us to really... Take the next step. That's right. What gives us any authority to invalidate a state court conviction within the context of an immigration proceeding on appeal from the BIA? We're not asking you to do anything other than recognize the extraordinary circumstances of this case, which is what a writ of quorum nobis is all about. But a writ of quorum nobis is directed to a trial court, and it says to the trial court, let this person go, and the conviction is no good. You want us to... What court are we... This writ that you're asking us to issue, to whom we are to direct it? You're to direct it to the BIA and the trial court. Well, but Congress has told petitioners how to attack state court convictions, and it's not through original writ of habeas, original writ of quorum nobis in the court of appeals. You've got to go to the state court and exhaust your remedies there, and then you can file a federal habeas, right? I respectfully disagree. No. Tell me where in any case... You can find any case in which the court of appeals, as an original matter, after no proceedings in the state court, federal court of appeals, issued a writ of quorum nobis to a state court to vacate a proceeding. Well, to keep our Latin straight, when a court of appeals issues the analog of a quorum nobis, it's called a quorum vobis for some reason. But anyway, so courts of appeal have recognized to have the original power to grant these writs. To state courts. To any court. To any court, without regard to EDPA or any federal statutes. We have the jurisdiction without any proceedings having occurred in a federal district court or in a state court to issue an original writ of quorum nobis striking down a state court conviction. And then to add to it, Judge Millar's question, on a petition for review from the state court, the only time we have a petition for these writs are when there's no other relief available. Why can't you go to the state court and seek relief? Because by the time we do that, our client will be permanently deported to Mexico, and the chances of her attacking the state court conviction from Mexico are zero. So unless some steps are taken, I don't know. Do you want to save the rest of it and perhaps we'll give you another minute or two? Or do you want to keep going? Well, we're on the central issue, so I'll step down and use a few more minutes at the end. Okay. We'll hear from the respondent. Good morning, Your Honors. May it please the court, Drew Brinkman on behalf of the Attorney General. In 2004, Ms. Ramirez pled guilty to violating Section 273.5 of the California Penal Code, which criminalizes inflicting corporal injury on a spouse or cohabitant. DHS put her into removal proceedings, and the immigration judge and board found that she was removable and ineligible for cancellation of removal. In this petition for review, Ms. Ramirez doesn't challenge the agency's findings that she's removable and ineligible for cancellation of removal. Instead, she's attempting to collaterally attack her conviction. Did she make this argument in the agency? No. Do we have an exhaustion problem? There's an exhaustion argument that the way she would have exhausted it probably would have been to ask for continuances and try to get relief in state court. I don't think an immigration judge or board have the authority to say that this conviction is not valid, so she could have raised that argument, but they probably would have just said we can't invalidate a conviction. Can you respond to your colleague's argument that going to state court would be futile because in the meantime she would be removed and couldn't effectively make the state court argument? I think it's a convenient argument, but who's to say? First of all, she pled guilty in 2004, so she's now at 12 years to try and invalidate this conviction. It's unclear why she hasn't done anything in that time frame, but she hasn't been removed yet. If she wants to invalidate this conviction, she needs to try. She can't just come before this court and ask this court to do it. I'm not sure that she has any remedies left in state court. We identified one in our brief that's a possibility, but she's waited for so long to try and invalidate this conviction that there might be time bars now. When was the notice issued in this case? A notice to appear? Yeah, a notice to appear. In essence, when was she given notice that this conviction might result in your deportation? I'll find it for you real quick. The conviction was in 2004, right? 2012 was the notice to appear. Eight years later, she's put on notice. If she didn't know it before, that this is a problem. That's right. I'm trying to figure out when in that sequence this argument was raised. It wasn't raised in the agency. No. So it's raised for the first time in the petition for review. Right. Do we have jurisdiction in this case? Over the argument about collaterally attacking the conviction? Yes. I'd say it's not exhausted, first of all, so no. It's the only argument in the petition. Right. So if you're correct, should we dismiss the petition or deny it? I guess dismiss because that is the only argument. I mean, we make the argument that she's waived all the other arguments she could have made about the removability and ineligibility for relief. There's no other arguments in the petition that somehow the BIA erred in denying her discretionary relief or that the crime isn't one for which removal is warranted. That's right. It's just that the crime is not, in her view, a valid conviction. She's actually asking you to vacate a conviction. So yeah, I guess dismissal would be appropriate. I'm not sure why I asked you. Go ahead. I don't think I really have anything else. It seems like the main point is an alien just simply can't collaterally attack a conviction on a petition for review from a removal order or a removal proceeding. So if there's any remedy, it's in state court. That's what she needs to be pursuing. Well, what do you say to the merits? Let's assume that you're wrong about that, that we could issue an original writ of quorum novus out of this court. And I have serious doubts about that, but let's assume that's the case. What do you say to the underlying merits of her claim that advice given by the California statute and the attorney who then adopts it is an effective assistance? Well, it's a, so the Padilla is not retroactive. This plea happened before Padilla, so Padilla wouldn't require any sort of particular advice. There are two cases in this circuit that talk about affirmative misadvice, where maybe an attorney tells them you won't be deported. There can still be an ineffective assistance of counsel action pre-Padilla if there's affirmative misleading advice. But she hasn't claimed any sort of affirmative misleading advice. If you look at, I mean, we don't really have a record of any of this, but if you look at the motion to supplement the record, her affidavit just says that her attorney didn't notify her that she would be deported. She hasn't claimed that her attorney said to her, you won't be deported. And that seems to be the distinction this court makes in Quan and Chan, is that there has to be some sort of... And that's a question that's directed at Federal convictions. I can't remember if there, they were definitely not petitions for review. They were either court movements. Well, there was, in Chan there was a removal proceeding pending, but Chan went to the District Court where he had been convicted of something and said, I want this set aside. The District Court said no, and the Court of Appeals said yes, it should be set aside. Right. But he did it in the court that had been set aside. Well, isn't this the Rodriguez-Vega case out of the Ninth Circuit that said basically, if all you tell the client is you may be deported, that that's ineffective or may be ineffective assistance counsel. I'm not sure they went quite so far as to send it back for a hearing, but said it may be ineffective assistance of counsel because there's a virtual certainty you're going to be deported. But that was post-Padilla. So, but I guess the question is, if this advice were given to somebody today and we were reviewing their criminal proceeding, you do agree this would be deficient advice? Yes. At least attackable advice. Right. We do. What does the record disclose as to what advice? I mean, there isn't a record because there hasn't been a proceeding anyplace yet, but what do we know about the advice that was given to her? We know what the court gave because that's a document in the record. But what do we know about what advice her lawyer gave her? It's in her, let's see, motion to supplement the record. Well, docket entry number 25. She has a declaration. She's trying to get into the record about what the advice was. And she says, when she pled guilty, she didn't know that the conviction would subject her to removal. I was not made aware that this conviction would result in my removal. I don't remember my attorney telling me that a guilty plea made me. So this is in a motion to supplement the record. Let's assume we granted that motion for a second. What's the government's position about the accuracy of that? Do you want a chance to contest it? Your colleague says it's uncontested, but that's kind of strange because it's not in the record yet. If it were in the record, what would the government's response be? We're kind of curious. We probably want to hear from the attorney that she's accusing to hear the attorney's side of the story. But that's, I mean, that's really the only person that's going to have any insight about this. Let me ask about one other matter. We're assuming that the advice was inaccurate because she was almost certainly going to be deported as opposed to possibly may be deported. But tell me about how does 212C work? She was ineligible for that relief because she got it before. But had she not gotten it before, would 212C have given her an avenue of relief? I'm not sure. I'm asking that because I don't know how 212C works exactly. She didn't apply for it. So this is all hypothetical. I'd say there's exhaustion. But she said she didn't apply. As I understand, she didn't apply for it because she had gotten it one time before and you can't apply for it a second time. She applied for cancellation of removal, which replaced 212C. And there's a provision in cancellation of removal that says if you've previously been granted 212C, you can't get cancellation of removal. She had not been granted 212C. Would she have been able to apply for cancellation of removal? Potentially. I mean, they didn't really get beyond that bar because these criminal convictions could certainly have made her ineligible, but the IJ didn't really reach any of that. How do I tell whether, in contrast to Rodriguez-Vega, whether this is the kind of criminal conviction that makes it virtually certain you will be deported? Rodriguez-Vega was a drug case, and I understand why the government is eager to deport people who commit drug crimes. How do we know that this is one where it's virtually certain that you will be deported? I don't want to concede away that, but I do think the court has said it's categorically a crime of domestic violence. Right. That's my question. If something is categorically a crime of domestic violence, is it accurate to say that it is pretty sure that you will be put in removal proceedings? Those cases weren't on the books at the time of the plea, so I wouldn't necessarily, the attorney at the time might not have known to say that this is a categorical domestic violence conviction. I don't, I haven't even thought about that. Because there's no asylum issue in this case. But then you get to the next question of whether or not it would be a particularly serious offense for purposes of removal. For asylum, right? I mean, there was no asylum application made and there was no determination on that. It doesn't have to be an aggravated felony or particularly serious offense. It just has to be a crime of violence for you. I don't want to step on... For removal purposes, it just has to be a crime of violence. And nobody contests that it is not a crime of violence. It was not exhausted. It was not waived on petition for review. Okay. Then we have your argument. Thank you. Well, why don't you put two minutes on the clock for counsel? Yes, the first is to delay. The delay in this case was because no one at the time the original conviction occurred had any notion that it was a deportable offense. Now, Section 237A, USC 237A, makes domestic violence an organized offense. It's not the violence. It's the domestic nature of it and the fact that a domestic partner is entitled to trust the other domestic partner. But in this case, it was two lesbians and who knows what kind of situation of so-called violence... For our purposes, we treat... I know. It's exactly the same as different gender domestic violence. I understand. Don't go there. Well, I'm going. Well, it's not going to help you. All right. But my point here is that the sentence was 26 days in jail. So this couldn't have been heavy violence. But you don't contest. Look, if the conviction is good, you're out of court. So don't spend time on the facts of it. All right. Fine. With regard to the advice that she was given, in Paragraph 5 of Form 201-1, she signed off, and her lawyer did, too, on this. If I am not a citizen of the United States, which she is not, she's a legal resident, I understand that this conviction may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States. Now, as I read all of Quan, Chan, and Rodriguez-Gomez, which I didn't want to take time to discuss because I thought it was absolutely plain for the other two cases, this is misadvice under the law before Padilla and after Padilla, and without regard to Padilla. This is not a Padilla case. Padilla amplified Quan by saying silence is also misadvice of counsel. But the state of the law prior to that was that saying something may have a deportation result was inadequate assistance of counsel. Thank you, counsel. We have your arguments, and this case will be submitted.
judges: Gould, Hurwitz, Melloy